# DEPARTMENT OF PROFESSIONAL REGULATION, etc. v NORRIS

## Case No. 86-0002

State of Florida, Division of Administrative Hearings

October 9, 1986

### APPEARANCES OF COUNSEL

**Errol H. Powell,** Department of Professional Regulation, for petitioner.

**David L. Norris,** pro se.

### OPINION

WILLIAM R. DORSEY, JR., Hearing Officer.

## RECOMMENDED ORDER

A formal hearing was held in this case before William R. Dorsey, Jr., the Hearing Officer assigned by the Division of Administrative Hearings on July 28, 1986, in Ft. Lauderdale, Florida.

## ISSUES

The issues framed by the Stipulated Issues, Facts and Exhibits are whether the license of David L. Norris as a certified general contractor should be disciplined for violation of:

1) Section 489.129(1)(e), *Florida Statutes*, (1983), by aiding an unlicensed person to evade the requirements of Chapter 489;

2) Section 489.129(1)(f), *Florida Statutes* (1983), by knowingly conspiring with an unlicensed person to use Norris' certificate with the intent to evade the requirements of Chapter 489;

3) Section 489.129(1)(j), *Florida Statutes* (1983), through the violation of Section 489.119, *Florida Statutes* (1983), by failing to qualify a firm through which Respondent was acting;

4) Section 489.129(1)(g), *Florida Statutes* (1983), by acting in a name not on his license.

At the final hearing, the Department amended the Administrative Complaint to dismiss the violations of Sections 489.129(1)(k) (abandoning a contracting job) and (m) (gross negligence or malpractice in contracting).

The Department presented two witnesses and the Respondent presented one witness. Twelve exhibits for the Department were received into evidence, and Mr. Norris offered one exhibit. The parties also stipulated to certain facts. (See Stipulated Issues, Fact and Exhibits filed May 15, 1986, Tr. 4-5)[1]

## FINDINGS OF FACT

1. At all times material, Respondent, David L. Norris, was a certified general contractor, having been issued license numbers CG C011081 and CG CA 11081, by the State of Florida, Department of Professional Regulation, Construction Industry Licensing Board. (PX 2; Stp. F. #1, Administrative Complaint paragraph 2)

2. At all times material, Mitch Kobylinski (Kobylinski) was unlicensed, and KMK Remodeling and Repair (KMK) had no qualifying

---

[1] Petitioner's Exhibits will be designed by (PX——), Respondent's Exhibit will be designed by (RX——), the Stipulated Facts will be designated by (Stp. F.——), and the transcript of the formal hearing will be designated by (Tr.——).

270

agent for the purpose of engaging in contracting under Section 489.119, *Florida Statutes* (1983). At times Kobylinski has done business as KMK. (PX 1; Stp. F. #2; Tr. 18-21)

3. At no time did the name Koblinsky or KMK appear on the license issued to Norris by the Construction Industry Licensing Board, nor did Norris qualify a business by that name. (Stp. F. #1, Administrative Complaint paragraph 9)

4. Norris knew Kobylinski was not licensed to engage in contracting. (Stp. F. #1, Administrative Complaint paragraph 5)

5. Koblinsky had worked for Norris on prior jobs, including working for Norris in the capacity as overseer on a large room addition. Norris had paid Kobylinski by the hour, by the day or by the type of work Kobylinski did. On one other job, Norris and Kobylinski shared the job in that Kobylinski was paid by the day, however, at the end both Respondent and Kobylinski split the profit. (Tr. 21.22)

6. Kobylinski, not Norris, was initially contacted by a leasing agent to improve a structure for Marianne Tomlinson (Tomlinson) at 21073 Jog Road, Suite 21, Boca Raton, to become Tootsie's, a nail salon. Kobylinski indicated to the leasing agent and Ms. Tomlinson that he would have to perform the work with a general contractor. (Stp. F. #3; Tr. 24)

7. Kobylinski presented a proposal on KMK's letterhead, dated August 17, 1984, to Tomlinson for the work to be done. (PX 3; Tr. 16, 19)

8. Norris also submitted a proposal, dated August 15, 1984, to Tomlinson. The evidence does now show what letterhead was used by Norris, because the exhibit is a carbon copy. (RX 1)

9. The proposed cost of the work from Kobylinski was $23,593.75 and from Norris was $23,600. Both proposals made separate provisions for formica work at additional prices of $10,600 and $10,500 respectively. (Stp. F. #4; PX 3; RX1)

10. Only Kobylinski's proposal was signed by Ms. Tomlinson. (PX 3; Tr. 39)

11. Norris and Kobylinski agreed that Norris would act as the overseer of the job and that, as compensation, Norris initially was to receive $1,000.00 to begin the job (Tr. 26) and further monies depending upon time Norris expended on the job. (Tr. 22-23, 28-29) They also agreed that Kobylinski was to deal exclusively with Tomlinson and be responsible for all monies on the job and paying subcontractors. (Tr. 26, 43)

12. No agreement was signed between Norris and Tomlinson providing that Norris would be the contractor for the job. (Tr. 38-39)

13. Norris applied for and was issued, on September 18, 1984, the building permit for the Tomlinson job. (PX 4, 5; Stp. F. #1, Administrative Complaint paragraph 6; Tr. 39)

14. Norris contacted the electrician, at the initial stage of the job, for the electrical work. (Tr. 56)

15. A certificate of occupancy was issued for the job. (Stp. F. #6; Tr. 46)

16. Tomlinson made all payments for the construction work by checks payable to Kobylinski, drawn on Tomlinson's business account for Tootsie's. (PX 7; Tr. 30)

17. Near the end of the job, Tomlinson gave Kobylinski a check, dated December, 1984, for $4,000.00. There were not sufficient funds in the account for Kobylinski to cash the check. Koblinsky returned to Tomlinson with the check, and Tomlinson issued him a replacement check for $2,000.00. She requested the return of the $4,000.00 check to her, but Kobylinski had not brought that check with him. At this point in time, the working relationship between Kobylinski and Tomlinson broke down. (PX 7; Tr. 31, 32)

18. Tomlinson submitted her punch list, dated December 17, 1984, to Norris. On it she identified him as the contractor for her job and stated she wanted to make the final payment to him. (PX 6)

19. On January 20, 1985, due to problems with the punch list and remaining payment, Tomlinson and Norris met. As a result of that meeting, they reached an agreement dated January 20, 1985, as to what remained to be paid, viz., $4,113.75, and what work remained to be done. The August 17th agreement between Kobylinski and Tomlinson was referenced in the agreement of January 20, 1985. (PX 8; Tr. 45)

20. By January 20, 1985, Kobylinski would have received all the monies for the cost of the work, according to the August 17th agreement, if the $4,113.75 were paid by Tomlinson. (Stp. F. #5)

21. On January 21, 1985, Norris filed a claim of lien against the Tomlinson job. The lien indicated that the total value of the work was $23,593.75 (which was the cost of construction according to the contract with Kobylinski) and that the amount unpaid was $4,113.75. Norris filed the lien because, after signing the agreement of January 20, 1985, he and Tomlinson had further disagreements. (PX 9; Tr. 46)

22. In a letter to Norris, dated April 23, 1985, in an attempt to get

Respondent to release his lien, Tomlinson indicated that she had contracted with Kobylinski, not Norris, to do the work for her. (PX 11)

23. As compared to the compensation received by Norris, Kobylinski has received over one-half of the money from the Tomlinson job. (Tr. 28)

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction of the subject matter and the parties hereto pursuant to Section 120.57(1), *Florida Statutes* (1983).

2. Section 489.129, *Florida Statutes* (1983), authorizes the Construction Industry Licensing Board to revoke or suspend the registration or certificate of a contractor and impose an administrative fine, place a contractor on probation, or reprimand or censure a contractor if the contractor is found guilty of the acts enumerated in that section.

3. The Administrative Complaint, as amended at the final hearing, alleges that Norris violated Section 489.129(1)(e) and (f), *Florida Statutes* (1983), by aiding or abetting and combining or conspiring with an unlicensed person to evade the requirements of Chapter 489; violated Section 489.129(1)(j), *Florida Statutes* (1983), through a violation of Section 489.119, *Florida Statutes* (1983), by failing to qualify a firm through which he was acting; and violated Section 489.129(1)(g), *Florida Statutes* (1983), by acting in a name not on his license.

4. Section 489.129(e) prohibits a licensed contractor from

aiding or abetting any uncertified or unregistered person to evade any provision of this act [Chapter 489].

5. Section 489.129(1)(f) prohibits a licensed contractor from

knowingly combining or conspiring with an uncertified or unregistered person by allowing one's certificate or registration to be used by any uncertified or unregistered person with intent to evade the provisions of this act [Chapter 489]. When a certificate holder or registrant allows his certificate or registration to be used by one or more companies without having any active participation in the operations, management, or control of such companies, such act constitutes prima facie evidence of an intent to evade the provisions of this act [Chapter 489]

6. The Board has shown that Norris aided or abetted and knowingly combined or conspired with an unlicensed person to evade the requirements of Chapter 489.

**273**

7. Kobylinski and KMK were unlicensed, and Norris knew this. Neither Kobylinski nor KMK were entitled to engage in contracting or act as a contractor under Sections 489.113(1), (2), 489.119 and 489.127 (1)(f), *Florida Statutes* (1983). Yet the only construction improvement contract executed for the work at Tootsie's was between Kobylinski and Tomlinson, not Norris and Tomlinson. As noted in the findings of fact, above, all payments by Tomlinson for the construction, except the last payment, were made to Kobylinski, not Norris. Kobylinski paid all subcontractors. All dealings with Tomlinson until about December 17, 1984 (when Tomlinson's check for the $4,000 due would not clear the bank) were handled by Kobylinski. It is Norris who applied for and was issued the building permit as the contractor for the Tomlinson job, however. Norris' participation with Kobylinski made it possible for Kobylinski to function as if Kobylinski were a licensed contractor.

8. The evidence does not support a conclusion that Kobylinski was acting as Norris' employee. Kobylinski obtained the services of Norris. Norris and Kobylinski agreed that Norris would act as overseer of the job. Further, Norris received $1,000.00 from Kobylinski to begin the job and additional money for time Norris expended on the job. By the end of the job, Kobylinski received the majority of the monies from the project. This was the reverse of the rules and method of compensation used in prior working arrangements of Kobylinski and Norris.

9. The Department has shown that Norris violated Section 489.119, by failing to qualify a business through which he was acting. Section 489.119(2) and (3), *Florida Statutes* (1983), requires a legal entity which proposes to engage in contracting to be qualified through a qualifying agent who shall be a licensed individual. Further, the license, if issued, of the business organization shall contain the name of the qualifying agent and the business organization. KMK was not qualified but was engaging in contracting; Norris acted through KMK in that initial contact for the Tomlinson job was made with Kobylinski and KMK and Kobylinski contracted with Tomlinson, under the name of KMK but Norris used his name for the building permit and acted as overseer on the project.

10. The Department has shown that Norris violated Section 489.129(1)(g), *Florida Statutes* (1983), by acting in a name not on his license. The evidence shows that Respondent was acting through Kobylinski, d/b/a KMK, but was licensed as an individual, with neither Kobylinski nor KMK appearing on his license.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law,

274

it is recommended that Respondent be found guilty as charged in the Administrative Complaint, as amended at the final hearing, and that the administrative fine of $1,000.00 be imposed.

DONE and ORDERED this 9th day of October 1986 in Tallahassee, Leon County, Florida.